[Civ. No. 10617. Third Dist. May 22, 1964.]

MILDRED T. DALEY, Plaintiff and Appellant, v.
COUNTY OF BUTTE, Defendant and Respondent.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Plaintiff and Appellant.

Robert B. Kutz for Defendant and Respondent.

FRIEDMAN, J.—Acting under the two-year discretionary dismissal provision of section 583, Code of Civil Procedure, the lower court ordered dismissal of this wrongful death action for lack of prosecution. Having secured new attorneys, plaintiff Mildred T. Daley then moved under section 473, Code of Civil Procedure, to vacate the dismissal on the ground of her mistake, inadvertence, surprise and excusable neglect. She appeals from denial of the latter motion.

Plaintiff is the widow of Roger R. Daley, who died on January 29, 1959, as the result of a collision between his pickup truck and a sheriff's patrol car driven by Deputy Sheriff Charles R. Brown, Jr., of Butte County. Brown too died as a result of the accident. She filed a claim for damages with Butte County, which was rejected. She then filed the

present wrongful death action, naming the county as defendant. The complaint was filed on July 27, 1959. Her attorneys of record were the firm of Taft, Wright and Hopkins of Vallejo. Actually, Mrs. Daley had sought the services of Mr. Cranson L. Hopkins of that firm and he had undertaken to represent her. Later there were changes either in the firm name or in the identity of Mr. Hopkins' associates. Mr. Hopkins' name was always included in that of the firm.

Butte County filed its answer on September 2, 1959, denying negligence of its employee and alleging contributory negligence of plaintiff's decedent. Attorney Robert B. Kutz of Chico appeared as counsel of record for the county.

On January 14, 1960, the widow and children of Deputy Sheriff Brown filed an independent wrongful death action, naming Mrs. Daley as defendant in her capacity as administratrix of her husband's estate. We shall refer to that action as *Brown* v. *Daley*. The plaintiffs in *Brown* v. *Daley* were represented by attorney J. R. King, Jr., of Oroville. The insurance carrier for Daley undertook defense of the action. On February 16, 1960, the carrier's attorneys, Kroloff, Brown, Belcher and Smart of Stockton, filed an answer as counsel of record for Mildred Daley, administratrix.

Several months passed. On May 16, 1960, Wright and Hopkins filed a memorandum to set *Daley* v. *Butte County* for trial. This step elicited a responsive move in *Brown* v. *Daley*. In the latter action the Kroloff firm, acting on behalf of Mrs. Daley as administratrix, moved to consolidate the two cases for trial. The motion was heard on June 6, 1960. Mr. Hopkins, as attorney for the plaintiff in *Daley* v. *Butte County*, did not oppose consolidation, although Mr. Kutz, on behalf of Butte County, did. The issues being the same in both actions, the court ordered their consolidation.

The next step was a motion filed by Mr. Kutz on behalf of Butte County to require joinder of Fred R. Daley, a son of decedent, as a party in *Daley* v. *Butte County*. The motion was heard on June 20, 1960. Although notified, Taft, Wright and Hopkins did not appear. The court granted the motion, ordering the plaintiff Daley to join her son, Fred R. Daley, as a party; and, if the latter refused to join, that an amended summons be issued and served upon him.

A few weeks later, on July 7, 1960, Mr. Kutz signed and sent Mr. Hopkins a stipulation reciting that Fred R. Daley had refused to join and that the pleadings be deemed amended to name him as a defendant. Mr. Hopkins kept this stipu-

lation for approximately one and one-half years, signing it on some unknown date and mailing it to the clerk for filing on December 19, 1961.

On June 22, 1960, a formal order consolidating the two actions for trial was filed. The order provided that the trial of *Brown* v. *Daley* be stayed until *Daley* v. *Butte County* was at issue. Although the consolidated actions were to have been pretried on July 5, 1960, the pretrial was dropped, since *Daley* v. *Butte County* was no longer at issue.

The record then subsides into more than a year of silence, although some depositions might have been taken. On August 22, 1961, attorney J. R. King, Jr., as counsel for the Browns, filed a memorandum to set the consolidated cases for trial. Butte County filed a memorandum opposing the trial setting on the ground that Mrs. Daley had not joined her son as a party and that *Daley* v. *Butte County* was thus not at issue. On October 20 the court on its own motion fixed December 18, 1961, as the date for a pretrial conference and all counsel were notified. On the latter date, counsel appeared for all parties except for Mrs. Daley in her action against the county. Taft, Wright and Hopkins did not appear. Since Fred R. Daley had never been served with process in *Daley* v. *Butte County*, that action was not at issue and the court continued the pretrial conference to February 26, 1962.

One day after the fruitless pretrial conference of December 18, Mr. Hopkins mailed to the clerk for filing the stipulation which Mr. Kutz had signed and sent to him one and one-half years earlier.

Pretrial conference was called on February 26, 1962, then continued to March 26, called on the latter date and continued to April 16. All counsel were notified of these continuances. According to a chronological account which the trial judge made in the course of subsequent proceedings, all these postponements were ordered because of the continued failure to serve process on Fred R. Daley. Although there is some indication that the Kroloff firm undertook to "cover" these pretrial conferences as a courtesy to Mr. Hopkins, the same chronological account states that there was no appearance of counsel on behalf of plaintiff Daley at these pretrial conferences.

There is nothing in the record before us to suggest that Mr. Hopkins was attempting to effect service on Fred R. Daley or encountering any difficulty in serving him. Indeed, an opinion filed later by the trial judge demonstrates that

Mr. Hopkins had not even requested issuance of an appropriate summons. If Mr. Hopkins was encountering any genuine difficulty in complying with the order for joinder, the record shows no attempt to communicate it to the court. One fruitless pretrial conference followed another; all that the trial court had from plaintiff's counsel was inaction, silence and disregard.

In the meanwhile Mrs. Daley had become worried over the lack of progress in her lawsuit. She made 12 to 15 attempts to reach Mr. Cranson L. Hopkins by telephone. (She lived in Oroville, while Mr. Hopkins' office was in Vallejo.) On each occasion Mr. Hopkins' secretary informed her that Mr. Hopkins was out of town. On each occasion Mrs. Daley left a request that Mr. Hopkins telephone her. On no occasion did he do so. In February 1961 Mrs. Daley became ill. She was confined to bed until September 1961. During the latter month she spoke with Albert M. King, an Oroville attorney. She told him of her inability to secure any response or action from Mr. Hopkins. She was able to reach Mr. Hopkins by telephone during late September or early October 1961. Mr. Hopkins agreed to withdraw from the case and permit substitution of Albert M. King as her counsel. He said he would contact Mr. King immediately.

Mr. King, however, had told Mrs. Daley that he could not actually represent her, since his brother, J. R. King, Jr., was counsel for the plaintiffs in the Brown action. He undertook to get a substitution of attorneys from Mr. Hopkins and to secure other counsel for her. On October 31 Albert King sent Mr. Hopkins a substitution of attorneys and a letter requesting copies of the pleadings. Mr. Hopkins did not respond. On December 4, 1961, Mr. King sent Mr. Hopkins a followup letter. Finally, on April 9, 1962, more than five months after receiving the requested substitution, Mr. Hopkins signed it and sent it to Mr. King.

Meanwhile, on April 2, 1962, Butte County filed a notice of motion to dismiss Mrs. Daley's action against it for lack of prosecution. No substitution of attorneys was on file, thus notice of the motion was served by mail on Taft, Wright and Hopkins. It was only after receiving notice of the dismissal motion that Mr. Hopkins sent the file, including the signed substitution of attorneys, to Albert King. The motion to dismiss was heard and granted on April 16. No one appeared to resist it. Several days later, on April 19, the court filed a formal order, setting forth at some length the nonappearance

and inaction on the plaintiff's part which prompted granting of the motion. Not until April 25 did Albert King become aware of the motion or the dismissal.

Several weeks later, on May 10, the firm of Goldstein, Barceloux and Goldstein appeared as counsel for the plaintiff in *Daley* v. *Butte County*. The appearance took the form of a notice of motion seeking to set aside the judgment of dismissal. The motion was based on Code of Civil Procedure section 473 and grounded on the plaintiff's mistake, inadvertence, surprise and excusable neglect. Supporting affidavits of Mrs. Daley and Albert M. King were filed, setting forth some of the matters recounted above. A third affidavit was that of Bernice Downer, a secretary in Mr. King's office. Mrs. Downer's affidavit sought to explain the delay between November 1961 and April 1962 in substituting Mr. Hopkins out of the case, that is, insofar as the delay might be attributed to causes other than Mr. Hopkins himself. According to Mrs. Downer, Mrs. Daley made numerous inquiries as to whether the substitution of attorneys had been received from Mr. Hopkins; after the followup letter of December 4, 1961, Mrs. Downer was working part-time because of illness and had some trouble with her memory; she mistakenly told Mrs. Daley that the substitution had been received; Mr. King had moved offices in February 1962, causing some disruption of his office papers; Mrs. Downer, uncertain of her recollection that she had received the substitution of attorneys, kept looking for it without success; until April 10, 1962, when the substitution and accompanying file arrived from Mr. Hopkins, she was not aware that it had not been previously received; she did not realize that Butte County had a pending motion to dismiss and did not call the file to Mr. King's attention until April 25. According to Mr. King's affidavit, not until the latter date was he aware that the county had noticed a motion to dismiss for hearing on April 16.

Plaintiff's motion to set aside the dismissal was heard and taken under submission on May 21. In an order filed on July 3, 1962, the trial judge denied the motion. In effect, the order was an opinion in which the trial judge gave earnest and thoughtful consideration to the history of the litigation and weighed the conflicting interests involved in the motion. He characterized Mr. Hopkins' conduct in these terms: "The files and records in this action reflect that plaintiff's attorneys never once personally appeared on any motion or pretrial conference throughout the entire history of the case

since 1959. Nor, for that matter, did plaintiff's attorneys ever communicate with the Court, insofar as this Judge is aware, either by letter, telephone call, telegram, or in person concerning any of the matters which pertain to this case, or any of the scheduled calendar hearings or pre-trial conferences.''

The trial judge's opinion noted also that Mrs. Daley's counsel of record had not seen fit to sign the substitution of attorneys until they had been served with the county's motion to dismiss for lack of prosecution.

Counsel have not dealt with an important preliminary point, appealability of the lower court's order. ██ An order of dismissal for lack of prosecution is a final judgment which may be attacked by a direct appeal. (*Southern Pacific R. R. Co.* v. *Willett,* 216 Cal. 387, 390 [14 P.2d 526] ; *Jackson* v. *Thompson,* 43 Cal.App.2d 150 [110 P.2d 470].) ██ If the ejected plaintiff has appropriate factual support, he may choose not to appeal but to attack the judgment in the trial court by moving to vacate it under Code of Civil Procedure section 473. (*Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184 [222 P.2d 867].) Such was the procedure adopted by the plaintiff here. If the lower court grants relief, the defendant has an appeal from the order vacating the dismissal. (*Bergloff* v. *Reynolds,* 181 Cal.App.2d 349 [5 Cal.Rptr. 461] ; *Stephens* v. *Baker & Baker Roofing Co.,* 130 Cal.App. 2d 765 [280 P.2d 39] ; *Proulx* v. *DeMoti,* 106 Cal.App.2d 265 [234 P.2d 1009] ; see also *Moore* v. *Thompson,* 138 Cal. 23 [70 P. 930].) Here the lower court denied relief. Although plaintiff had an appeal from the dismissal, she now attacks it circuitously through the avenue of an appeal from the order refusing to vacate. ██ As a general rule, such an order is not appealable. (*Southern Pacific R. R. Co.* v. *Willett, supra,* 216 Cal. at p. 390; *Hunt* v. *United Artists Studio,* 79 Cal. App.2d 619 [180 P.2d 460] ; 3 Witkin, Cal. Procedure, pp. 2170-2171.) The theory is that a plaintiff may not utilize an appeal from an order refusing to vacate as an indirect means of attacking an appealable order of dismissal.

██ A party seeking under section 473 to relieve himself of a dismissal injects into the case new elements of mistake, inadvertence, surprise and excusable neglect. Newly revealed facts, or the hitherto unrevealed impact of known facts, may demonstrate that the moving party was effectually deprived of a meaningful opportunity to defend against the original motion. These newly revealed circumstances may also per-

suade the trial court that the dismissal should not have been ordered, that it would not have been ordered had the plaintiff an opportunity to present the circumstances to the court in the first instance. Thus, the discretion of the trial court in disposing of the motion to vacate will be affected or controlled by facts not before it on the original hearing (*Moore* v. *Thompson, supra,* 138 Cal. 23) ; and the action of the appellate court will be based upon a record not available to the plaintiff had he appealed from the dismissal itself.

Here, the inexplicable immobility of Mr. Hopkins not only ripened the action for dismissal. It also blocked actual knowledge of Butte County's motion to dismiss. Notice of the motion was addressed to Mr. Hopkins and mailed from Chico on March 30, 1962. Mr. Hopkins presumably received it within a day or two thereafter. He knew that he was still Mrs. Daley's attorney of record, since he had been silently clutching the substitution of attorneys for five months. Knowledge that he was now charged with failure to prosecute apparently stimulated him to the extent of ridding himself of the case. He then shipped the file to Mr. King's office at Oroville, where it arrived on April 10. Not until April 25 did Mr. King become aware of the county's motion to dismiss. Actually, the motion had been heard and granted without opposition on April 16. ▆ Mrs. Daley had constructive or fictitious notice of the motion through service on Mr. Hopkins, who was technically her attorney of record. But she had no actual awareness of the motion and no effective opportunity to present a defense. She might have appealed, but the record on appeal would not have reflected her side of the story. Under these circumstances, where a direct appeal from the dismissal is relatively ineffectual, the order refusing to vacate the dismissal is appealable. (*Spellens* v. *Spellens,* 49 Cal.2d 210, 229 [317 P.2d 613] ; *In re Yoder,* 199 Cal. 699, 702-703 [251 P. 203] ; *Estate of Baker,* 170 Cal. 578, 582-583 [150 P. 989].)

As is usual in these cases, the party ousted for procedural lapse urges the law's policy to dispose of litigation on the merits ; while the other party, having the advantage of the trial court's discretionary power to deny section 473 relief, emphasizes appellate reluctance to interfere except for abuse of discretion. ▆ An order denying relief runs counter to the law's policy encouraging trial and disposition on the merits. It is subject to closer appellate scrutiny than one granting relief, and doubts will be resolved in favor of the party attempting to get to trial. (29 Cal.Jur.2d, Judgments,

§ 152, pp. 97-99; 3 Witkin, Cal. Procedure, pp. 2115-2116.) ■ Defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation. That policy, however, is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds. (See *Ferris* v. *Wood,* 144 Cal. 426, 428 [77 P. 1037]; *Ordway* v. *Arata,* 150 Cal.App.2d 71, 75-79 [309 P.2d 919]; 3 Witkin, Cal. Procedure, p. 2116.)

■ Plaintiff could have filed a timely notice of appeal from the order of dismissal as well as the order refusing to vacate. (Cal. Rules of Court, rule 3(b).) Literally, her notice of appeal is directed only at the order denying relief under section 473. Theoretically, appellate reversal of that order would leave the defendant's motion to dismiss pending and undetermined. (See *Bergloff* v. *Reynolds, supra,* 181 Cal. App.2d at p. 359.) Plaintiff, however, must demonstrate that a different result, that is, denial of the motion to dismiss, would ensue if the latter motion were to be heard. (*Bethlahmy* v. *Customcraft Industries, Inc.,* 192 Cal.App.2d 308, 310 [13 Cal.Rptr. 310]; *Hummel* v. *Hummel,* 161 Cal.App.2d 272, 277 [326 P.2d 542].) Thus the merits of the dismissal under section 583 are inevitably involved in a review of the section 473 order. Also, in this case, the facts involved in the two proceedings are almost the same. The circumstances set out in support of Mrs. Daley's motion to vacate are simply extensions of the history of delay and neglect which ripened the case for dismissal in the first place. They are largely the same facts which plaintiff would have urged in opposition to the motion to dismiss had she had actual notice and an opportunity to defend against the latter. Thus it is hardly possible to review one proceeding without the other. It seems logical to proceed by determining whether the enlarged facts revealed by the section 473 motion would justify a discretionary dismissal under section 583.

■ Several standards have been developed as guides to discretionary dismissal of actions which have not been brought to trial within two years. The discretion is to be exercised in a manner to aid, not to impede or defeat the ends of substantial justice. Each case must be decided on its individual facts and features. ■ The plaintiff must exercise diligence to expedite his case; no such duty is cast upon the defendant. ■ The defendant need not show prejudice in support of the motion to dismiss; rather, preju-

dice from unreasonable delay is presumed. Decisions expressing these standards are collected in *Ordway* v. *Arata, supra,* 150 Cal.App.2d 71, and *Knight* v. *Pacific Gas & Electric Co.,* 178 Cal.App.2d 923 [3 Cal.Rptr. 600].

A litigant may appear in his own person or by attorney but cannot do both. A duly employed attorney of record has exclusive charge of the proceedings on behalf of his client. (*Zurich etc. Co.* v. *Kinsler,* 12 Cal.2d 98, 105 [81 P.2d 913].) A general doctrine charges the client with the neglect of his attorney, but gives him redress against the latter. (*Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 532 [190 P.2d 593] ; *Hummel* v. *Hummel, supra,* 161 Cal. App.2d at p. 277.) Dismissals for litigation delay have been sustained on appeal where the delay was attributable to the attorney and not to the client. (See cases cited, *Knight* v. *Pacific Gas & Eelectric Co., supra,* 178 Cal.App.2d at p. 930.) On the other hand, in the individualized disposition of discretionary dismissal proceedings, incapacity or excusable delay on the part of the attorney has been a factor in appellate reversal of dismissals. (*Ordway* v. *Arata, supra,* 150 Cal. App.2d 71; *Jepsen* v. *Sherry,* 99 Cal.App. 2d 119 [220 P.2d 819].)

Despite the general rule which imputes the attorney's neglect to the client, there are exceptional cases in which the client, relatively free from personal neglect, will be relieved of a default or dismissal attributable to the inaction or procrastination of his counsel. (See *Hallett* v. *Slaughter,* 22 Cal. 2d 552 [140 P.2d 3] ; *Vartanian* v. *Croll,* 117 Cal.App.2d 639, 644-645 [256 P.2d 1022] ; *Stub* v. *Harrison,* 35 Cal.App.2d 685, 688-690 [96 P.2d 979] ; *Manson* v. *First Nat. Bank,* 366 Pa. 211 [77 A.2d 399] ; 17 Am.Jur., Dismissal, etc., § 81, p. 155 ; see also, Note, 31 Cal.L.Rev. 600.)

Here the neglect was inexcusable and extreme, amounting to positive misconduct. Mr. Hopkins' consistent and long-continued inaction was so visibly and inevitably disastrous, that his client was effectually and unknowingly deprived of representation. An attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action. (*Fowlkes* v. *Ingraham,* 81 Cal.App.2d 745, 747 [185 P.2d 379] ; *Price* v. *McComish,* 22 Cal.App.2d 92, 96-97 [70 P.2d 978].) By Attorney Hopkins' unexplained failure to serve process; by his failure to appear at successive pretrial conferences, if only for the purpose of seeking extensions or making explanations; by his failure to

communicate with court, client and other counsel; by holding the substitution of attorneys for more than five months while his client's cause ripened for disaster; by his refusal to get on with the lawsuit or get out of it, Attorney Hopkins inflicted severe damage on his client's case. She had legal representation only in a nominal and technical sense. Attorney neglect urged in opposition to dismissal or in support of a motion to vacate usually consists of errors of judgment, mistake or ignorance of law, or lapses in law office management. (See *Fidelity Fed. Sav. & Loan Assn.* v. *Long*, 175 Cal.App.2d 149, 154-155 [345 P.2d 568].) Such mishaps are pallid compared with Attorney Hopkins' mistreatment of his client's interests. Under these unusual circumstances, where the client was unknowingly deprived of effective representation, she will not be charged with responsibility for the misconduct of her nominal counsel of record.

Defendant points out that Mrs. Daley was well acquainted with Albert King, also that the Kroloff firm was representing her as administratrix in the Brown case. Thus she could have consulted other counsel at an earlier stage. Mrs. Daley was not an ignorant woman. She had been a candidate for the Butte County Board of Supervisors in 1960, had been successful in the June primary and defeated at the November election. Inferably, she ignored her attorney's lapses and was personally neglectful in pursuing her own lawsuit.

If hindsight is extracted from these arguments, they lose persuasiveness. Clients should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers. The legal profession knows no worse headache than the client who mistrusts his attorney. The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable. Pretrial procedures are the cabalistic rituals of the lawyers and judges who serve as priests and high priests. The layman knows nothing of their tactical significance. He knows only that his case remains in limbo while the priests and high priests chant their lengthy and arcane pretrial rites. He does know this much: that several years frequently elapse between the commencement and trial of lawsuits. Since the law imposes this state of puzzled patience on the litigant, it should permit him to sit back in peace and confidence without suspicious inquiries and without incessant checking on counsel.

Certainly it is unrealistic to expect a lay person to know of statutory deadlines and two-year dismissal statutes. Although Mr. Hopkins had ignored Mrs. Daley's telephone

messages, she was entitled to expect fulfillment of his professional obligations. Mr. Hopkins' failure to respond to her messages might have made her uncomfortable, but she had no reason to expect the extreme neglect which occurred. She had no actual notice of pretrial motions and conferences, much less of Mr. Hopkins' failure to attend them. Prior to September 1961, she had no reason to prognosticate five months of delay while a requested substitution of attorneys gathered dust in Mr. Hopkins' office. Under the circumstances, her two years of reliance on the attorney was understandable and justifiable.

Many decisions express the view that a judge is more than an umpire, that he has a duty to protect the case against the inadvertence of counsel. (See *Miller* v. *Republic Grocery, Inc.*, 110 Cal.App.2d 187, 192-193 [242 P.2d 396].) ██ In wrestling with the law's delays, progressive concepts of judicial administration charge judges with a role larger than passivity. (Levin and Woolley, Dispatch and Delay (1961) pp. 25-31; Kalven, *The Bar, The Court and The Delay*, 328 Annals, American Academy of Political and Social Science, pp. 37-45.) The notion of active judicial responsibility may be more natural to laymen than to the bench and bar. Possibly the specialized perspective of lawyers and judges tends to a myopic view of legal smashups such as occurred here. Laymen expect not only justice but protection from courts and judges. Consistent procrastination by counsel should evoke something other than judicial irritation within the four walls of the courtroom.* Courts have ample means to command attendance of counsel. When it became apparent that Attorney Hopkins' nonappearance might lead his client to disaster, a communication from the court might have done much to restore the lawsuit to balance. Certainly Mrs. Daley, the client, was unaware of her attorney's consistent disregard of the court. It would be ironic to penalize the client for omissions of which she knew nothing, but which the court had means to remedy.

██ There are other circumstances revealed by the enlarged record which must play a role. This action was filed

---

*During the time in question, Superior Court rule 8.2(a) of the Superior Court Rules (now Cal. Rules of Court, rule 210(a)) provided:
" (a) Each party appearing in any case shall attend the pretrial conference by counsel, or if none, in person, and shall have a thorough knowledge of the case, be prepared to discuss it and to make stipulations or admissions where appropriate."

promptly, approximately three months after the county had rejected plaintiff's claim. The county filed its answer in September 1959 but did ·not present its motion to join Fred Daley until June 1960, nine months later. Attorney Hopkins' failure to serve Fred Daley was a major factor in the lack of prosecution. The necessity for serving Fred Daley arose as the result of a motion which the county delayed for nine months after the case was first at issue. The county sought the dismissal two years and eight months after the action had been filed, but its own nine-month delay was a counterbalancing element.

The affidavit of Mrs. Downer, which was not contradicted or impeached, demonstrates that during the five months preceding the dismissal plaintiff was making efforts to withdraw her case from Attorney Hopkins. Through Mrs. Downer's error Mrs. Daley was incorrectly informed that these efforts had culminated in success. Mrs. Daley was thus justified in believing that the matter was now in Mr. King's hands where it would receive appropriate attention. Actually, these efforts were still frustrated by the amazing immobility of Attorney Hopkins. Had Mr. King's office staff kept him fully informed, he might have moved the court for a substitution of attorneys at some point after his December 4 follow-up letter to Mr. Hopkins. Such an action might have saved perhaps three months. If responsibility for several months of delay is attributable to events in Mr. King's office, this period of delay is relatively minor, and the events themselves form a picture of mistake or inadvertence rather than neglect. Mr. Hopkins remains as the real source of the time loss.

Misconduct of her attorney, which effectively deprived plaintiff of representation, is but the primary ingredient in a set of circumstances which justify or mitigate plaintiff's failure to bring her suit to trial within two years after its commencement. The two-year period is not an arbitrary limit, but simply a general guide to determine whether "want of prosecution" appears and, if so, whether the power to dismiss should be used in view of the facts of the entire situation. (*Jepsen* v. *Sherry, supra,* 99 Cal.App.2d at pp. 120-121.) Under the unusual circumstances of this case, dismissal for want of prosecution would defeat rather than promote substantial justice, constituting an abuse of discretion. (*Ordway* v. *Arata, supra,* 150 Cal.App.2d at pp. 75-79; *Wilson* v. *Barry,* 119 Cal.App.2d 621, 624 [259 P.2d 991].)

Provided that plaintiff showed the requisite mistake, inadvertence, surprise or excusable neglect, the very purpose of the section 473 motion was to restore her opportunity to resist the motion to dismiss, an opportunity of which the circumstances had deprived her. (*Bergloff* v. *Reynolds, supra,* 181 Cal.App.2d at p. 355.) The uncontradicted facts are that Mr. Hopkins sent the file, including the substitution of attorneys, to Albert King's office only after service of the notice of motion to dismiss; that he did call the pending motion to Mr. King's attention by a transmittal letter enclosed with the file; that Mr. King's secretary did not examine the file nor see the letter for several weeks after their receipt; that Mr. King was not aware of the dismissal motion until April 25, nine days after it had been heard; that the motion to vacate the dismissal was filed three weeks after the order itself and 15 days after it came to Mr. King's knowledge. Plaintiff's ignorance of the motion and her inability to defend against it stem from two sources: (1) the failure of Mr. King's secretary to inspect the file until several weeks after its arrival; and (2) Mr. Hopkins' continued misconduct, including retention of the file for five months without executing the substitution of attorneys. The first source is the kind of excusable mistake and inadvertence in law office management which frequently furnishes occasion for relief under section 473. (See *Stub* v. *Harrison, supra,* 35 Cal.App.2d 685.) Plaintiff should be relieved of the damaging consequence of the second, if no undue prejudice is caused the other party.

In weighing the motion to vacate, the trial judge could consider what prejudice or injustice the defendant might suffer as the result of its order. (*Berri* v. *Rogero,* 168 Cal. 736, 740 [145 P. 95]; *Carbondale Machine Co.* v. *Eyraud,* 94 Cal.App. 356, 360 [271 P. 349].) The trial court's order indicates that it gave weight to the inconvenience and expense caused the other parties by Attorney Hopkins' inaction. In opposing the motion to vacate, the county did not urge that delay beyond the two-year period made defense on the merits any more difficult. It told no tale of dead or unavailable witnesses. Its freedom of action and credit were not impaired by long-pending litigation. Its sole disadvantage lay in the justifiably bruised patience of its counsel and the unjustified expense of fruitless court appearances. Section 473 authorized the court to do substantial justice by imposing on the moving party "such terms as may be just," including payment of reasonable

counsel fees. Thus the only tangible prejudice suffered by the county could have been eliminated as a condition of granting relief.

In our view, the ends of justice required that the motion to vacate be granted, whether with or without conditions. Its denial was an abuse of discretion.

The cause is remanded to the trial court with direction to vacate the order of dismissal, either unconditionally or upon such terms as may be just.

Pierce, P. J., and Schottky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 15, 1964.