[Civ. No. 38423. Second Dist., Div. Four. Jan. 31, 1972.]

HAROLD L. HANSEN et al., Plaintiffs and Appellants, v. SNAP-TITE, INC., et al., Defendants and Respondents.

## COUNSEL

Paul Caruso, in pro. per., for Plaintiffs and Appellants.

Latham & Watkins, Philip F. Belleville and Michael J. Shockro for Defendants and Respondents.

## OPINION

FILES, P. J.—This case of first impression involves the application of rule 203.5(f), California Rules of Court, which authorizes the superior court to impose conditions upon the denial of a motion to dismiss an action under Code of Civil Procedure section 583, subdivision (a).

The trial court made an order on December 7, 1970, granting a motion to dismiss this action for want of prosecution "unless on or before December 15, 1970 plaintiff pays to defendant the sum of $10,000.00 as reimbursement of attorney fees incurred for prior preparation, said sum not to be recoverable as costs. If plaintiff pays to defendant the sum of $10,000.00, the motion is denied." The $10,000 was not paid and by reason thereof, on December 18, 1970, the court entered a final order of dismissal.[1]

Plaintiffs Harold L. Hansen, Bernard Gira and Paul Caruso originally filed this action on July 7, 1966. The complaint, as amended, contained two causes of action. The first alleged that plaintiffs had rendered services to defendants in clearing title to certain described real property, for which

---

[1]Plaintiffs' notice of appeal purports to appeal from the order of December 7, 1970. In conformity with the rule which requires a notice of appeal to be construed liberally, we treat it as an appeal from the December 18 dismissal. (Rule 1(a), Cal. Rules of Court.)

services defendants were indebted to plaintiffs in the amount of $1,050,000. The second cause of action was a common count on behalf of Caruso alone for legal services valued at $25,000. By April 26, 1967, the case was at issue upon the amended complaint and a cross-complaint.

On September 30, 1966, defendants made demand on Caruso for a bill of particulars with respect to the second cause of action. Following several hearings, and the filing of documents by Caruso purporting to constitute a bill of particulars, the court on August 31, 1967, made an order excluding evidence on the second cause of action by reason of plaintiff's failure to file an account which conformed to the requirements of section 454 of the Code of Civil Procedure. On September 29, 1967, plaintiffs collectively filed a notice of appeal from that order.

Defendants filed an at-issue memorandum and certificate of readiness, and a trial setting conference was set for January 11, 1968. On November 3, 1967, plaintiffs moved to vacate the trial setting conference date. The declaration of Caruso attached thereto stated that an appeal had been taken, that discovery had not yet been completed and would not be completed until after the hearing on appeal, and that counsel for plaintiffs was not yet ready to bring the case to trial. Defendants opposed the motion, but the court granted it on December 1, 1967, and vacated the at-issue memorandum and certificate of readiness, subject to reinstatement after termination of the appeal.

After some delay in the office of the superior court clerk, the record was filed in the Court of Appeal March 14, 1968. On July 28, 1969, this court filed its opinion dismissing the appeal upon the ground that the order appealed from was not appealable. (*Caruso* v. *Snap-Tite, Inc.*, 275 Cal. App.2d 211 [79 Cal.Rptr. 642].) The remittitur went down September 29, 1969.

On September 16, 1969, the superior court reinstated the at-issue memorandum and certificate of readiness, pursuant to defendants' motion, and, following pretrial, the case was set for trial on February 19, 1970.

Plaintiff Paul Caruso was at all times attorney of record for all plaintiffs. On February 3, 1970, Mr. Joseph A. Gazzigli, an attorney associated in his office, told Michael J. Shockro, one of the attorneys for defendants, that they "should hold off" on preparation for trial because "it appeared that the plaintiffs were losing their zeal for prosecuting this case." During the ensuing two weeks there were negotiations resulting in an oral agreement made on the afternoon of February 17 between Philip F. Belleville, one of the attorneys for defendants, and Paul Caruso and Joseph A.

Gazzigli for plaintiffs, that the action would be dismissed and releases given upon payment of $10,000 by defendants to plaintiffs.

On the trial date, February 19, the case was placed off calendar. On March 20 settlement papers prepared by defendants' attorneys were submitted to Caruso. In April Gazzigli told Belleville that the other plaintiffs "would not go through with performance."

On April 15 Belleville wrote to Caruso, reminding him he had agreed to the settlement, and that defendants had acted in reliance on that agreement. On April 21 Caruso sent a reply to Belleville stating, "There was nothing wrong with the form of the release as prepared by yourself and Mr. Shockro and as received by these offices. However, our clients do not feel that they can at this stage accept the settlement and wish to proceed with the foresaid matter."

On August 18, 1970, plaintiffs filed an at-issue memorandum and on September 28 moved for an early trial setting. On October 19 the motion was granted "without prejudice to any motion under Sec. 583 CCP." Trial was set for January 5, 1971.

On November 10, 1970, defendants noticed a motion to dismiss the action for want of prosecution, supported by declarations of attorneys Belleville and Shockro, reciting the history of the litigation, including the repudiated settlement.

The declarations also stated that, during December, January and February, defendants' attorneys had engaged in intensive preparations for trial, amounting to 258 attorney hours, which time was billed to and paid by defendants. Because of the settlement negotiations starting February 3 and the agreement reached February 17, the work product was left in an uncompleted state. Shockro stated, "With the exception of the drafts of a few deposition indexes, none of my work product is usable at this time." The Belleville declaration stated: "As a result, most of my work will have to be entirely redone at great additional expense and hardship to defendants, should defendants once again have to prepare for trial."

In opposition to the motion to dismiss, Caruso filed a declaration which stated in part: "With regard to the settlement, Joe Gazzigli, formerly of this office, did agree to a settlement without the consent and knowledge of Harold L. Hansen, Robert Brunson, and Bernard Gira all of whom have a stake in this matter."

After a hearing on December 7, 1970, the court made its order granting the motion to dismiss unless plaintiffs paid defendants $10,000 as reimbursement of attorney fees; and, on December 18, upon a showing that the

money had not been paid, dismissed the action. A motion to reconsider and vacate the dismissal was heard and denied on December 28, 1970.

█ Code of Civil Procedure section 583, subdivision (a), provides: "The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed." Under this section "The exercise of the trial court's discretion will be disturbed only for clear abuse." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

█ As amended in 1969, effective January 1, 1970, the section further provides: "The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council." Rule 203.5(f) of the California Rules of Court, one of the rules adopted to implement the new statute, provides: "The court may grant or deny the motion or, where the facts warrant, the court may continue or defer its ruling on the matter pending performance by either party of any conditions relating to trial or dismissal of the case that may be required by the court to effectuate substantial justice."

The purpose and effect of this rule are to give the trial court some appropriate sanction against the dilatory litigant short of the harsh remedy of dismissal of his case. Where the damage caused by the delay is compensable in money, it is a reasonable exercise of the court's power to offer the offending litigant the opportunity to make redress before subjecting him to the ultimate sanction of a dismissal. Such a ruling could serve both to deter and to remedy unreasonable delay, and to uphold the judicial policy which favors disposition of litigation on the merits. (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 566.)

The rule is analogous to that portion of Code of Civil Procedure section 473 under which the court may grant relief from default "upon such terms as may be just." It is well established that under this section the court may "impose conditions, such as payments of *costs* or *attorney's fees* to the adverse party to compensate him for loss or expense which might be suffered by the granting of the motion." (Italics in original.) (5 Witkin, Cal. Procedure (2d ed. 1971) p. 3733, and cases cited therein; see *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 394 [38 Cal.Rptr. 693].)

█ In upholding the trial court's ruling, we do not rely upon the delay which occurred prior to February 1969. The principal cause of that earlier delay was that plaintiff Caruso was unable or unwilling to file a bill of particulars which conformed to the trial court's requirements, so that on August 31, 1967, the court made an order excluding evidence on the second cause of action of the complaint. Plaintiffs then sought review of that

order in the appellate court, and the superior court decided that the pendency of the appeal was a good reason for vacating the setting conference date. The case was restored to the trial calendar as soon as the court would allow it after the dismissal of the appeal.

No appellate court ever has passed upon plaintiffs' contention that the trial court erred in its order of August 31, 1967, excluding evidence. Although plaintiffs' attempt to obtain an interlocutory appellate ruling was a mistake, we cannot say that this attempt was an unreasonable act intended to delay the trial.

The tactics employed by plaintiffs in February 1969 are of a different sort. When the case was about to be tried, counsel represented that plaintiffs were "losing their zeal," and made an oral agreement to settle for less than 1 percent of the amount demanded; then after the trial date had been vacated, plaintiffs reneged and demanded a trial. Plaintiffs have made no effort to excuse their conduct, or to explain it except to say that two of the plaintiffs who were not present and a third person who is not a party did not agree to what Caruso and Gazzigli had done. If there was any mitigating explanation for agreeing to settle without the approval of Hansen and Gira, it has not been disclosed to the court. Assuming that Caruso and Gazzigli honestly intended to settle the claims of all plaintiffs their conduct, at best, manifested a reckless disregard of the interests of the court and the opposing parties. The effect was to require another trial setting 11 months later, subjecting defendants to additional inconvenience, uncertainty and expense, and to cause defendants' attorneys to rework and renew their trial preparation and engage in a variety of other procedural matters in the meantime. This delay, under these circumstances, justified the trial court's decision that plaintiffs should not be allowed to proceed without reimbursing defendants for the additional attorney fees which would be incurred.

Plaintiffs' brief argues here that "the effect of the dismissal is contrary to the manifest policy of the law that encourages parties to settle cases prior to trial." Not so. It does not encourage settlement for an attorney to represent that the case is settled when it is not, and to cause a trial date to be vacated upon such a representation.

Plaintiffs' other contention is that $10,000 was an unreasonable amount to require them to pay as a condition for going ahead. They argue that the opinion expressed in Belleville's declaration that "most" of that work would have to be redone was an overstatement, and that the cost of repreparing for trial could not reasonably be estimated at $10,000.

The decision which is here for review is an exercise of the judicial discretion of the trial court which should not be disturbed by an appellate court

except in case of manifest abuse. (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 564.)

We need to make only brief reference to some of the circumstances which the trial court was entitled to consider. The court had before it the file showing the history of the litigation. This was a case where plaintiffs were asserting claims for personal services aggregating $1,075,000, plus prejudgment interest in excess of $300,000. In a case involving claims of that amount, it is expectable that every procedural step and every issue will receive exhaustive treatment by counsel. The clerk's transcript here is over 1,500 pages. The shutdown of defendants' trial preparation took place between February 3, when Gazzigli told Shockro that plaintiffs "were losing their zeal," and February 17, when the settlement was agreed upon. This was the period in which the examination, study and organization of trial material would normally be reduced to usable form. Inasmuch as defendants' attorneys had the assurance of plaintiffs' counsel that the case was settled, the work could be discontinued without thought of future use.

Granted that not all of the 258 hours of trial preparation were wasted, there were other factors to be considered. The case had been hard fought by both sides on procedural issues from the beginning. The longer the case remained pending the more work there would be. Among other things, plaintiffs' tactics in February 1970 brought on the preparation of settlement papers, and the contested hearings on future trial setting and the motion to dismiss. Against this background it was reasonable for the trial court to believe that if the case were to be tried in 1971 as plaintiffs requested, defendants' attorney fees would be $10,000 greater than if the case had gone to trial in February 1970.

Plaintiffs have not asserted in the trial court or here that the condition imposed was beyond their means. It was reasonable for the trial court to assume that if plaintiffs believed they had a litigable claim for a million dollars or anything like it, the $10,000 condition would not prevent their going forward. Unquestionably the pendency of the action has cost defendants far more than this in attorney fees and other expenses, not to mention the uncertainty and inconvenience which cannot be counted in dollars. Plaintiffs have not been denied a trial on the merits. They are here because they have chosen to abandon their claim rather than pay a part of the expense which their tactics cost the defendants. On the entire record, the condition seems to be well in accord with the purpose "to effectuate substantial

justice." When that condition was not fulfilled, the final order of dismissal was justified.

The order is affirmed.

Kingsley, J., and Dunn, J., concurred.

A petition for a rehearing was denied February 17, 1972, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1972. McComb, J., Peters, J., and Mosk, J., were of the opinion that the petition should be granted.