Filed 3/19/26  Vasquez v. Janelle Investment CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FERNANDO ALVARO VASQUEZ et al., | B341597 |
| Plaintiffs and Respondents, | Los Angeles County Super. Ct. No. 21STCV45484 |
| v. | |
| JANELLE INVESTMENT, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Sepehr Omrani; Tisdale & Nicholson and Michael D. Stein for Defendants and Appellants.

Castelblanco Law Group, Eric E. Castelblanco, Shilpa Anand and Elena Sanchez for Plaintiffs and Respondents.

———————————

Defendants Isabel Shaff and her company Janelle Investment, Inc. appeal an order denying their motion to vacate a default judgment in this habitability action.  They contend their former attorney abandoned them during the litigation, ultimately resulting in the default judgment.[1]  In denying their motion to vacate, the trial court found defendants had engaged in a long pattern of delay and obstruction, even after they were

[1]  Generally, an order denying a motion to vacate a default judgment is not independently appealable and may be reviewed only on an appeal from the judgment.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).)  However, our high court has recognized that the order may be appealable as a postjudgment order where two requirements are met:  (1) the issues raised to challenge the order are necessarily "different from those arising from an appeal from the judgment" and (2) the order " 'affect[s] the judgment or relate[s] to it by enforcing it or staying its execution.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 650–652; Code Civ. Proc., § 904.1, subd. (a)(2); accord *Rooney v. Vermont Investment Corporation* (1973) 10 Cal.3d 351, 359 ["an appeal from an order refusing to vacate a judgment will lie when the record available to the appellate court on such appeal raises issues which are not disclosed or could not be disposed of on appeal from the judgment itself"].)  Because defendants' grounds for challenging the order are based on a factual record developed after entry of the judgment that implicates the propriety of the default judgment itself, we conclude these requirements are met here. (See, e.g., *Daley v. Butte County* (1964) 227 Cal.App.2d 380, 389 [Plaintiff who was abandoned by her attorney "might have appealed, but the record on appeal would not have reflected her side of the story.  Under these circumstances, where a direct appeal from the dismissal is relatively ineffectual, the order refusing to vacate the dismissal is appealable."].)

indisputably aware of the default judgment.  The record supports the court's finding.  We affirm.

## BACKGROUND

By early June 2022, plaintiffs had served both defendants with the summons and complaint.  Defendants failed to file a timely answer, and, in August and September 2022, the trial court entered defaults against them.

Defendants eventually retained Michael Earle to represent them in this litigation.  Earle obtained a stipulation from plaintiffs to set aside the defaults, and, in November 2022, defendants filed their answer.

On March 29, 2023, plaintiffs moved to compel discovery responses from defendants.  In a supporting declaration, plaintiffs' attorney said she had attempted to meet and confer with Earle by email but received no response.

On April 20, 2023, Earle moved to be relieved as defendants' counsel.  He declared there was "ongoing animosity" between his office and Shaff that made "an attorney/client relationship impossible."

On April 25, 2023, the court held a hearing on plaintiffs' motions to compel.[2]  The court granted the motions; ordered defendants to respond to plaintiffs' discovery requests within two weeks; and imposed $3,000 of monetary sanctions against defendants and Earle, jointly and severally.  Defendants failed to comply with the court's order.

---

[2]    Defendants have not provided a transcript of this or any other hearings in this case.  According to the court's minute order, an attorney specially appeared for defendants to advise the court of Earle's motion to be relieved as counsel.

3

Plaintiffs moved for terminating sanctions. Defendants failed to file an opposition and did not appear at the noticed hearing. On June 26, 2023, the court granted the motion; struck defendants' answer; and entered default against them. In the same order, the court denied Earle's motion to be relieved as counsel, finding he "failed to provide proper proof of service."

On July 26, 2023, Earle filed another motion to be relieved as counsel, again asserting "ongoing animosity" between his office and Shaff. He said the "attorney client relationship has been torn asunder by the client's refusal to communicate with [Earle] and his office in an effective and civil matter" and Shaff had "berat[ed] Mr. Earle and his associate(s) in the hallway of the court." He served Shaff by mail at her last known address, which he had confirmed by telephone within the last 30 days.

On August 22, 2023, the court granted Earle's motion to be relieved as defendants' counsel. Earle served defendants with the order the next day.

On September 26, 2023, plaintiffs served defendants by mail with an application to enter default judgment.

On September 27, 2023, the court entered default judgment against defendants, awarding plaintiffs a total of $1,675,785.57 in general damages, restitution, statutory damages, attorney fees, and costs.

On January 16, 2024, defendants, in propria persona, filed a motion to vacate the default judgment. In a supporting declaration, Shaff claimed she was not personally served with the summons, rendering the default judgment void. She also said Earle and his associate had failed to file an answer to the complaint and they did not conduct an investigation to prepare

4

her defense. She declared, they "took my money and dropped my case."

Plaintiffs opposed the motion, relying in part on court records showing Shaff had appeared at a September 27, 2022 hearing before Earle successfully negotiated the stipulation to set aside defendants' original default.[3] They argued Shaff's "actual presence in court" necessarily "contradict[ed] any possible claim of lack of notice or knowledge of this litigation."

The court summarily rejected defendants' motion to vacate, citing their failure to comply with the court's standing order on mandatory courtesy copies.

On February 21, 2024, defendants, in propria persona, filed a second motion to vacate the default judgment. The motion and supporting declaration were nearly identical to their original filing. Plaintiffs opposed the motion on the same grounds. The court rejected the motion, again due to defendants' failure to comply with the court's standing order.

In April 2024, defendants retained new counsel to represent them in the litigation.

On June 27, 2024, defendants filed a third motion to vacate the default judgment. This time, defendants sought equitable relief, arguing they had been "abandoned" by Earle. In her supporting declaration, Shaff said Earle had "never alerted" her about plaintiffs' discovery requests; Earle "did not alert" her about plaintiffs' motion to compel; she learned "in October or November 2023" that the default judgment had been entered

---

[3]     Plaintiffs also produced proofs of service showing Shaff was personally served with the summons, as was Janelle Investment's registered agent for service of process.

against defendants; Earle "had not been responding to [her] for months" and "took no steps to notify [her] of what happened"; after learning of the judgment, she "hired a paralegal" to file defendants' first and second motions to vacate; and it was only after she met with her new attorney that she realized she "was failed by [Earle] and the paralegal." Shaff asserted she had a viable defense to the habitability action. She admitted the Housing Department had "issued notices" to her, but she claimed "[m]ost" of these citations were due to complaints made by "one tenant that was causing deliberate damage to the property" and she had "made diligent efforts to make repairs" that the Housing Department requested.

Plaintiffs opposed the motion, relying principally on Shaff's admission that she learned of the judgment in October or November 2023. They argued defendants' long delay in hiring new counsel to bring the current motion was "inexcusable" and precluded equitable relief from default.

The trial court denied the motion, concluding equitable relief was not warranted because defendants, "often while in pro per and also when represented by counsel, ha[d] engaged in a long pattern of delay and obstruction" despite plaintiffs' stipulation to set aside the original default.

Defendants filed a timely notice of appeal from the order.

## DISCUSSION

We review an order denying equitable relief from default for an abuse of discretion. (*Rappleyea, supra,* 8 Cal.4th at p. 981; *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 27 (*Kramer*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings

of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.) "Thus, in reviewing the trial court's *factual findings* in this matter, 'our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below. [Citations.] In assessing whether any substantial evidence exists, we view the record in the light most favorable to respondents, giving them the benefit of every reasonable inference and resolving all conflicts in their favor.' " (*Kramer,* at p. 28.)

Although defendants sought relief from the default judgment under the court's inherent equitable powers, we first discuss the availability of statutory relief under Code of Civil Procedure section 473, subdivision (b), as it provides helpful context for our review of the trial court's order.[4] (See, e.g., *Kramer, supra,* 56 Cal.App.5th at pp. 28–29.) Under section 473, "a court may relieve a party from a default or default judgment due to 'mistake, inadvertence, surprise, or excusable neglect' if the party files an application for relief within six months from the date of the default." (*Kramer*, at p. 28, quoting § 473, subd. (b).) " ' "Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations 'very slight evidence will be required to justify a court in setting aside the default.' [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved

---

[4]     Statutory references are to the Code of Civil Procedure.

in favor of the party seeking relief from default." ' " (*Kramer*, at p. 28.)

Here, because more than six months had elapsed from the entry of default, and hence relief under section 473 was unavailable, defendants moved to vacate the default judgment under the trial court's inherent equitable authority. (See *Rappleyea, supra,* 8 Cal.4th at pp. 980–981.) Even when statutory relief is unavailable, "courts have the inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake."[5] (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97; see *Rappleyea,* at p. 981.) But "[t]he court's ability to grant relief under its inherent power is narrower than its ability to grant relief under section 473, subdivision (b)." (*Kramer, supra,* 56 Cal.App.5th at p. 29, citing *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901, fn. 8.) "This is especially true after a default judgment has been entered. 'A party who seeks to

---

[5]     " 'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding.' " (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300.) "Extrinsic mistake occurs 'when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' [Citation.] In contrast with extrinsic fraud, extrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. . . . Relief will be denied, however, if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur." (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47.)

set aside a default judgment pursuant to the court's equity power must make a substantially stronger showing of the excusable nature of his or her neglect than is necessary to obtain relief under . . . section 473.' " (*Kramer,* at p. 29; see *Rappleyea,* at pp. 981–982, 984.)  As our Supreme Court has explained, "[w]hen a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances.  '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court.  Beyond this period there is a strong public policy in favor of the finality of judgments and only in *exceptional circumstances* should relief be granted.' " (*Rappleyea,* at pp. 981–982, second italics added; *Kramer,* at p. 29.)

"A party seeking relief under the court's equitable powers must satisfy the elements of a 'stringent three-pronged test': (1) a satisfactory excuse for not presenting a defense, (2) a meritorious defense, and (3) diligence in seeking to set aside the default." (*Kramer, supra,* 56 Cal.App.5th at p. 29, quoting *Rappleyea, supra,* 8 Cal.4th at pp. 982–983.)  Here, the trial court found defendants "ha[d] engaged in a long pattern of delay and obstruction," implicitly denying equitable relief under the first and third prongs of this test.  Substantial evidence plainly supports the court's finding with respect to the third prong —defendants did not act diligently to set aside the default. We therefore need not address the test's other elements.  (See *Rappleyea,* at p. 984 [equitable relief from default is available only if the moving party satisfies "all three prongs of the stringent test"]; see also *Kramer,* at p. 38 [moving party's failure to demonstrate a satisfactory excuse or diligence in setting aside default mandates denial of equitable relief, regardless of whether

9

a meritorious defense could be established]; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503 (*Cruz*) [same].)

Cruz is instructive.  The plaintiff in *Cruz* filed a product liability suit against the distributor of a pressure cooker in December 2004.  (*Cruz, supra,* 146 Cal.App.4th at p. 493.)  After the defendant failed to answer the complaint, the plaintiff filed a request for entry of default and mailed it to the defendant in early February 2005.  (*Id.* at pp. 493–494.)  The head of the defendant's claims and insurance department forwarded the default request to the defendant's insurer on February 22, 2005, but neither the insurer nor the defendant took any action to seek relief from the default.  (*Id.* at pp. 504, 506.)  The court entered default on February 25, 2005, and a default judgment was entered against the defendant in May 2005.  Finally, in late-November 2005, the defendant filed a motion for relief.  (*Id.* at p. 494.)  The trial court granted the motion on equitable grounds, relying on declarations from the defendant's president and the head of its insurance department who said they were unaware of the lawsuit until the filing of the default request.  (*Id.* at pp. 494, 497, 502, 504.)  The plaintiff appealed the order.  The reviewing court reversed, concluding the defendant had not acted diligently in attempting to set aside the default after learning of it.  (*Id.* at pp. 494–495, 506, 510.)

The defendant in *Cruz* maintained it had acted diligently by forwarding the default request to its insurer, " 'assuming [its] interest would be protected by [its] insurance broker and carrier.' " (*Cruz, supra,* 146 Cal.App.4th at pp. 506–507.)  The reviewing court held this was insufficient to meet the defendants' burden under the stringent test for equitable relief.  (*Id.* at pp. 502–503.)  As the *Cruz* court explained, "[r]eliance on a third

party constitutes a satisfactory excuse only if it is reasonable," and the record did "not support the conclusion that [the defendant's] reliance on its broker and/or insurance carrier was reasonable" under the circumstances. (*Id*. at p. 507.) On the contrary, the evidence compelled a finding that the defendant had not acted reasonably or diligently because, "two months" after it forwarded the notice of request for default to its insurer, the plaintiff served the defendant with a request for entry of judgment that—"[a]t a minimum"—put the defendant "on reasonable inquiry notice that the insurer had not acted in response to the entry of default." (*Id*. at pp. 507–508.) Despite this, the defendant waited "nine months after it admit[ted] it was aware that [the plaintiff] was seeking entry of default[ ]before taking any action." (*Id*. at p. 508.) Under these circumstances, the defendant's "failure to inquire as to the status of the case or to follow up with its insurer [could not] be considered diligent." (*Ibid.*)

While the evidence in *Cruz* compelled a finding that the defendant did not act diligently (thus requiring reversal of the lower court's order), here, we need determine only whether substantial evidence—contradicted or uncontradicted—supports the trial court's finding that defendants unreasonably delayed in seeking appropriate relief from the default judgment. (See *Kramer, supra,* 56 Cal.App.5th at p. 28.) It plainly does.

The record shows that, on August 22, 2023, the court granted Earle's motion to be relieved as defendants' counsel, and Earle served defendants with the court's order the next day. On September 25, 2023, plaintiffs filed and served defendants by mail with an application to enter default judgment. Shaff admits she learned "in October or November 2023" that the

11

default judgment had been entered against defendants. Despite this, Shaff waited until April 2024 to retain new counsel to represent defendants (including the corporate defendant that could be represented only by counsel). Even then, defendants did not seek equitable relief from the default judgment until June 27, 2024—at least eight months after Shaff admits she learned of the judgment. This evidence proves defendants did not act diligently to set aside the default. (Cf. *Cruz, supra,* 146 Cal.App.4th at pp. 508–509 [lack of action for nine months after learning of default was "unreasonable"].)

Like the defendants in *Cruz,* defendants argued in their moving papers that they had acted diligently by relying on a third party to assist them with their two earlier failed attempts to seek relief from the default in propria persona. The trial court rejected this argument, and the evidence supports its implicit finding that defendants' conduct was unreasonable. (See *Cruz, supra,* 146 Cal.App.4th at p. 507.) First, as the court noted with respect to the corporate defendant, Janelle Investment could seek relief from the default only through retained counsel —the company could not reasonably rely on its officer Shaff (or a paralegal) to represent it in those proceedings. (See *Vann v. Shilleh* (1975) 54 Cal.App.3d 192, 199 ["A corporation cannot represent itself in court, either in propria persona or through an officer or agent who is not an attorney."].)

Second, with respect to both defendants, the failed motions hardly demonstrate reasonable or diligent efforts to set aside the default. Both motions were based principally on the blatantly false assertion that defendants had not been personally served with the summons—a claim obviously contradicted by the answer that defendants filed in November 2022 after plaintiffs stipulated

12

to set aside defendants' original defaults. In her declaration, Shaff asserted the improper handling of the first motion was due to a paralegal's neglect; however, she also admitted that she "engaged the same paralegal" to file a nearly identical second motion that was again rejected for the same procedural defect. Setting aside whether it was reasonable to enlist a paralegal to seek relief from a $1.6 million default judgment, it plainly was not reasonable to engage the same paralegal after the first motion was rejected. (See *Rappleyea, supra,* 8 Cal.4th at pp. 984–985 ["self-representation is not a ground for exceptionally lenient treatment"; equitable relief from default cannot be based on "defendants' ill-advised self-representation"].) Substantial evidence supports the trial court's finding that defendants unreasonably delayed in seeking appropriate relief from the default judgment after they admittedly learned of it.

On appeal, defendants argue the trial court should have excused their lack of diligence because plaintiffs had not argued they would be prejudiced if equitable relief were granted. Defendants rely on *Rappleyea* for the principle that, of the three prongs of the stringent test for equitable relief, "diligence is the most inextricably intertwined with prejudice." (*Rappleyea, supra,* 8 Cal.4th at pp. 983–984.) However, our high court's application of this principle makes clear that it does not help defendants in this case. As the *Rappleyea* court explained, "[p]rejudice to a plaintiff is obviously less *if judgment has not been entered* when a defendant seeks equitable relief." (*Id.* at p. 984, italics added.) That was the case in *Rappleyea*, which led the court to reason that "the diligence prong simply cannot assume the importance here that it would *in the ordinary case wherein the trial court would be reversing a judgment and divesting a plaintiff of a*

13

*property right by granting equitable relief from default.*"  (*Ibid.*, italics added.)  That is not the case here.  Here, plaintiffs diligently sought and obtained a judgment against defendants in September 2023—at least nine months before defendants moved for equitable relief.  The trial court did not err in implicitly concluding plaintiffs would be prejudiced by being divested of this established property right.

## DISPOSITION

The order is affirmed.  Plaintiffs are entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

ADAMS, J.

HANASONO, J.