[No. A027572. First Dist., Div. Four. Oct. 29, 1986.]

DONALD RAY PARKER et al., Plaintiffs and Respondents, v. CONTRACTORS STATE LICENSE BOARD et al., Defendants and Appellants.

**COUNSEL**

John K. Van de Kamp, Attorney General, and Roy S. Liebman, Deputy Attorney General, for Defendants and Appellants.

Philip M. Arnot for Plaintiffs and Respondents.

**OPINION**

**POCHÉ, J.**—Defendants and appellants John F. Maloney, registrar of contractors, and the Contractors State License Board of the Department of

Consumer Affairs appeal from a judgment entered in a proceeding in administrative mandamus (Code Civ. Proc., § 1094.5) ordering issuance of a peremptory writ of mandate commanding defendants to set aside their decision to suspend the contractor's licenses of plaintiffs and respondents Donald Ray Parker dba Parker Electric, and California Parker Electric Inc., of which Donald Ray Parker (Parker) is president.

## I.

The registrar of contractors filed an accusation against various related corporate entities but focused primarily on the conduct of California Parker Electric, Inc. The accusation asserted two grounds for discipline. It charged that California Parker Electric: (1) had violated Business and Professions Code section 7110[1] in that it had willfully violated Labor Code section 227[2] by withholding employee benefit contributions from employees' wages and failing to submit them to the union and (2) had violated Business and Professions Code section 7116[3] by fraudulently representing to its employees that it had deducted the monies for that purpose and had forwarded the money to the union.

At the subsequent administrative hearing Parker alleged that because the amounts owed to the union trust fund had been discharged in bankruptcy, the disciplinary action violated 11 United States Code section 525(a) (hereinafter section 525).[4] He argued that the sole purpose was to discipline him

[1]Business and Professions Code section 7110 provides in pertinent part that: "Willful or deliberate disregard and violation of . . . the safety laws or labor laws . . . of the state . . . constitutes a cause for disciplinary action."

[2]Labor Code section 227 provides in pertinent part: "Whenever an employer has agreed with any employee to make payments to a health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees, or a negotiated industrial promotion fund, or has entered into a collective bargaining agreement providing for such payments, it shall be unlawful for such an employer willfully or with intent to defraud to fail to make the payments required by the terms of any such agreement."

[3]Business and Professions Code section 7116 provides: "The doing of any wilful or fraudulent act by the licensee as a contractor in consequence of which another is substantially injured constitutes a cause for disciplinary action."

[4]11 United States Code section 525(a) provides in full: "Except as provided in Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a-499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181-229), and section 1 of the Act entitled 'An act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes,' approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."

for failing to pay a debt that had been discharged in bankruptcy. The administrative law judge (ALJ) rejected that argument and found the registrar's accusations to be true. The ALJ found: (a) that the basis of the accusation was the fraud involved in the failure to forward the "withheld" sums to the union, not the bankruptcy or the discharge of the debt and (b) that the state's interest in protecting employee and labor organizations was separate and apart from the matters resolved by the bankruptcy court. The ALJ proposed suspension of the contractor licenses of California Parker Electric, Inc. and Donald Ray Parker dba Parker Electric[5] for concurrent six month terms.

Although it is not a part of the record, we presume and will assume that the registrar adopted the proposed decision of the ALJ.

Thereafter, Parker sought review of the registrar's decision by filing a petition for a writ of administrative mandamus. He claimed that appellants had acted in excess of the jurisdiction conferred by Business and Professions Code section 7113.5[6] and also renewed the contention that section 525 barred the disciplinary action. Ignoring appellants' request for specific findings on willfullness and fraud, the trial court held that the registrar's action violated section 525 because it was imposed primarily for the collection of a debt and because suspension of Parker's license would force the close of his businesses depriving him of the fresh start contemplated by the Bankruptcy Code. The trial court granted the peremptory writ of mandate directing appellants to set aside the decision. This appeal followed.

## II.

Section 525 prohibits a governmental unit from suspending, denying, revoking, refusing to renew, or discriminating with respect to a person's license "solely because" that person has been a bankrupt, was insolvent before or during bankruptcy, or has not paid a debt that was discharged in bankruptcy. The section is intended to ensure that persons

---

[5]Donald Ray Parker was president and responsible managing officer of California Parker Electric, Inc., and is sole owner of Parker Electric. Under Business and Professions Code section 7122.5, the causes for discipline established against California Parker Electric, Inc., likewise constituted causes for discipline against Parker Electric. The ALJ also proposed that Donald Ray Parker and his brother be prohibited from serving as officers, directors, associates, partners, or responsible managing employees of any licensee and that any licensee which employs, elects, or associates either of them be subject to discipline as well. Because Donald Ray Parker is the individual whose conduct and status is essentially at issue here, references will be to him unless clarity requires that the corporate entity be named.

[6]Section 7113.5 expressly provides that "No disciplinary action shall be commenced against a licensee for avoiding or settling in bankruptcy . . . the licensee's lawful obligations incurred as a contractor for less than the full amount of such obligations."

who have been debtors under the federal bankruptcy laws are not deprived of a "fresh start" by governmental discrimination. Discrimination based solely upon bankruptcy or nonpayment of a discharged debt could encourage reaffirmations, contrary to the express anti-reaffirmation policy of the code. (*Duffey* v. *Dollison* (6th Cir. 1984) 734 F.2d 265, 271.) Thus, it has been said that the "'primary purpose of section 525 of the Bankruptcy Code is to prevent the government either from denying privileges to individuals solely as a reaction to their filing bankruptcy or from conditioning the grant of privileges on the bankrupt's reaffirmation of certain debts.' [Citation.]" (*Duffey* v. *Dollison, supra,* at p. 271.)

However, section 525 does not insulate a debtor from all disciplinary actions merely because they arise from circumstances related to a debt which has been discharged in bankruptcy. Use of the statutory language of limitation "solely because"[7] prohibits actions against a licensee only if they are based on such grounds. Thus if bankruptcy or nonpayment of a discharged debt is the sole reason for disciplinary action, section 525 is triggered. However, if other factors indicate that the debtor is unsuitable to hold a license, the state may commence disciplinary proceedings. (*In re Fasse* (Bankr.D.Colo. 1984) 40 Bankr. 198, 201; *In re Hinders* (Bankr.S.D.Ohio 1982) 22 Bankr. 810, 813-815.) This distinction thus requires careful scrutiny of the facts of each case to determine the true basis for the governmental action at issue. (H.R.Rep. No. 95-595, 1st Sess., pp. 366-367 (1977); see also *Matter of Alessi* (Bankr.N.D.Ill., E.D. 1981) 12 Bankr. 96, 98-99 [upholding the Illinois Racing Board's denial of a racing license because its decision was supported by several nontainted reasons, including the negotiation of and previous license suspension based on dishonored checks as well as the accumulation of large debts which subjected the debtor to influence and endangered the sport's integrity]; *In re Webb* (Bankr.E.D.Pa. 1984) 38 Bankr. 541, 545 [upholding a gas company's refusal to restore service to debtor's home because it was based on illegal tampering and receipt of stolen gas, not solely on debtor's failure to make restitution]; *In re Fasse, supra,* 40 Bankr. at p. 201 [upholding a Colorado law providing that payment on behalf of a broker from the state recovery fund precipitated a disciplinary hearing on his license on the condition that any actual discipline not be based solely on the nonpayment of a discharged debt]; cf. *Matter of Lam-*

---

[7]"Nowhere in the Code or its legislative history is the seemingly obvious term 'solely because' defined. Courts considering § 525 questions have placed various interpretations on the term, ranging from 'only because,' [citation], 'only reason,' [citation], 'except for the fact,' [citation], to 'reason independent of' [citation]. In addition the court in *In re Rose,* 23 B.R. 662, 668, n. 8 (Bkrtcy.D.Conn. 1982), noted, but did not specifically adopt, the debtor's suggestion that '"solely" could be considered as meaning "primarily" or "predominately."'" (*In re Rath Packing Co.* (N.D.Iowa 1983) 35 Bankr. 615, 619 [refusing to specifically adopt any one definition but considering them to be instructive].)

*billotte* (Bankr.M.D.Fla. 1982) 25 Bankr. 392; *In re Rath Packing Co.,
supra,* 35 Bankr. 615; and *In re Geffken* (Bankr.N.D.Ohio 1984) 43 Bankr.
697 [each finding the disciplinary action was motivated solely or primarily
on a debtor's failure to pay prepetition debts].)

III.

Thus the dispositive question in the instant case is a factual one: what
was the factor that motivated the decision to discipline Parker? The registrar
specifically found that Parker's "deduction" of the sums from the employees'
payroll checks and the failure to forward such sums to the union constituted
fraud which subjected his license to discipline under Business and Profes-
sions Code sections 7110 and 7116. The registrar further found that it was
the fraud, rather than the bankruptcy discharge of the debt to the union,
which formed the basis of the accusation.

The trial court, however, made different findings. It found that the "ob-
ligation" owed to the trust fund "was a monetary one based on benefits that
would normally have been paid by California Parker Electric" and com-
mented: "The Court is aware that had the monetary obligation been paid
to the Union at the time owed that this proceeding would not have been
brought by [the registrar], and therefore, *considers such action to be pri-
marily for the collection of a debt and only incidentally to be concerned
with the violation of the Labor Code Section requiring the payment of such
union benefits.*" (Italics added.) The court thus concluded that "[w]here,
as here, the debtor has, in fact, discharged the debt upon which this pro-
ceeding was brought by [the registrar], then this Court believes that such
action violates 11 USC 525."

■ Because the instant proceeding concerned the suspension of a con-
tractor's license, the trial court was required to apply the independent
judgment test in reviewing the agency's decision. (Cf. *Bixby* v. *Pierno*
(1971) 4 Cal.3d 130, 139, 146 [93 Cal.Rptr. 234, 481 P.2d 242]; *Housing
Development Co.* v. *Hoschler* (1978) 85 Cal.App.3d 379, 385-386 [149
Cal.Rptr. 400].) Normally, then, the question before this court is whether
substantial evidence supports the trial court's findings. (Cf. *Moran* v. *Board
of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Rabago* v.
*Unemployment Ins. Appeals Bd.* (1978) 84 Cal.App.3d 200, 206 [148
Cal.Rptr. 499].) The instant case does not fit into that procedural framework,
however, because the trial court failed to make findings as a result of which
it was impossible for this court to review the decision.

The controlling principle is found in section 634 of the Code of Civil
Procedure: "When a statement of decision does not resolve a controverted

issue, or if the statement is ambiguous, and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue." Failure to make a finding, therefore, is normally reversible error unless this court concludes that there is no substantial evidence to support the position of the appealing party. (Cf. *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 75 [190 Cal.Rptr. 104]; *Rabago* v. *Unemployment Ins. Appeals Bd., supra,* 84 Cal.App.3d at p. 212; *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 304 [131 Cal.Rptr. 547].)

 The crucial factual question omitted from the trial court's statement of decision concerns whether or not respondents actually violated the regulatory statutes in question here.[8] In other words, did respondents commit fraudulent or willful acts in failing to forward to the union sums withheld from the employees' paychecks. In its memorandum of tentative decision, the trial court commented that "whether the prior obligation was one that violated a Labor Code section or was a business obligation should make no difference so long as the obligation was a monetary one." To the contrary, the answer determines whether or not section 525's prohibition is triggered. If respondents committed fraud in violation of the relevant statutes, and appellants decide to discipline them for such unlawful conduct, section 525 does not bar such action simply because the debt arising from the fraud is subsequently discharged in bankruptcy. In such circumstances, the disciplinary action would not have been instituted "solely because" respondents declared bankruptcy. Instead, the motivating factor would be the protection of the public from a contractor "whose method of doing business indicates a lack of integrity upon his part or a tendency to impose upon those who deal with him." (*West Coast etc. Co.* v. *Contractors' etc. Bd.* (1945) 72

---

[8]After the trial court rendered its tentative decision, appellants filed a request for a statement of decision which specifically requested the court to answer the question: "whether petitioners have subjected their licenses to discipline by the Contractors Board under Business and Professions Code section 7110 for wilful violation of Labor Code section 227, and, if not, why they haven't; . . ."

Appellants also filed an objection to the proposed statement of decision, complaining, inter alia, that "Petitioners['] proposed Statement of Decision does not resolve the following controverted issues:

"a. Whether petitioners have subjected their licenses to discipline by the Contractor Board under Business and Professions Code section 7110 for wilful violation of Labor Code section 227, and if not, why they haven't;

"b. Whether petitioners have subjected their contractor's licenses to discipline under Business and Professions Code section 7116, and if not, why they haven't; . . ."

The hearing on appellants' objections was held by way of an in-chambers conference call. No transcript of the hearing is in the record.

Neither of the requested findings were in the approved statement of decision.

Cal. App. 2d 287, 301-302 [164 P. 2d 811].) On the other hand, if respondents were not fraudulent, i.e., if they simply failed to make the payments for lack of money, then section 525 would bar disciplinary action. The factual determination omitted from the trial court's decision is determinative and cannot be resolved by an appellate court.

The judgment is reversed and the cause is remanded to the trial court with directions to make new findings in accordance with the views expressed herein and to enter judgment accordingly.

Anderson, P. J., and Sabraw, J., concurred.