[No. B063743. Second Dist., Div. Four. July 16, 1996.]

COLLEEN JANELLE MOSS, Plaintiff and Appellant, v.
STOCKDALE, PECKHAM & WERNER, Defendant and Respondent.

## COUNSEL

Goldman & Goldman and Eric Goldman for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Alice Oshiki, David L. Hunt, Roy M. Brisbois and Jonathon Kaplan for Defendant and Respondent.

## OPINION

**VOGEL (C. S.), P. J.**—

### INTRODUCTION

In this action by plaintiff and appellant Colleen Janelle Moss for legal malpractice, the trial court granted summary judgment in favor of defendant and respondent Stockdale, Peckham & Werner, on the ground the action is barred by the statute of limitations, Code of Civil Procedure section 340.6.[1] The matter has been retransferred to us by the California Supreme Court for reconsideration in light of *Adams* v. *Paul* (1995) 11 Cal.4th 583 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (hereafter *Adams*). We reverse the summary judgment, because under *Adams* there are triable issues of fact as to when plaintiff suffered actual injury.

---

[1]All further statutory references are to the Code of Civil Procedure.

## Factual and Procedural Background

Attorney Michael Wayland represented plaintiff in an insurance bad faith action styled Moss v. Interinsurance Exchange, filed in Los Angeles Superior Court on December 29, 1983.[2] Wayland failed to prosecute the case, and in early 1989 it was dismissed for failure to bring it to trial within five years as required by section 583.310. The record shows the following activity prior to the dismissal.

In the fall of 1987, Wayland became associated with the firm of defendant Stockdale, Peckham & Werner and brought plaintiff's case with him. Sometime in the latter half of 1988, Wayland left the Stockdale firm. At all times Wayland alone remained plaintiff's counsel of record and he was so indicated on the register of actions in the underlying case. However, on December 21, 1987, Wayland wrote a letter on Stockdale letterhead stationary to counsel for Interinsurance Exchange stating that he had become associated with the Stockdale firm, and Wayland sent a copy of this letter to plaintiff.

In January 1988, plaintiff met with Wayland in the Stockdale offices; she was there again in May 1988, but on arrival was informed in the reception area by Wayland's secretary that he was unavailable. While Wayland was at the Stockdale firm, he undertook to represent plaintiff in another matter concerning a deferment of her student loan. On June 30, 1988, plaintiff sent Wayland a mailgram, at the Stockdale office, complaining about lack of communication and his failure to send her a status report as promised. In the mailgram she reminded Wayland ". . . that near 5 months remains; as attorney of record our contracts through 1988 must not have a loss of claims." Apparently plaintiff's communications with Wayland did not improve; on December 14, 1988, she sent a letter by certified mail to the Stockdale firm advising that she was unable to contact Wayland and expressing her concern and requesting an urgent response. The letter carries the reference notation: "REF: Statute Running." Later, on December 20, 1988, plaintiff sent a mailgram addressed to the Stockdale firm in which she refers to the two occasions she was in the firm's office to meet with Wayland, and to a January 13, 1988, motion filed by Interinsurance Exchange in the underlying action and served by mail at the firm's office. She also requested the Stockdale firm's "continued involvement; as the complaint was filed on 12/29/83." On December 21, 1988, a Stockdale partner responded to plaintiff's certified letter, informing her that messages had been left for Wayland

---

[2]Wayland later was associated with the firm of Mavridis & Associates, then later with defendant Stockdale, Peckham & Werner, then later left the Stockdale firm. Wayland is a defendant below but not a party to the appeal, because his motion for summary judgment was denied. Mavridis & Associates is no longer a party to the appeal, due to a settlement during this appeal.

asking him to contact her and that the firm did not have the file and had no information about her cases; the Stockdale letter declined to offer plaintiff any assistance, but advised that she take immediate action.[3]

The five-year deadline passed on December 29, 1988. In January and February 1989, Interinsurance Exchange filed motions to dismiss based on the five-year statute. Both motions were served by mail on the firm at its office address and on Wayland at addresses in Northridge and La Canada-Flintridge, California. The motion went unopposed, and on February 27, 1989, the underlying bad faith action was dismissed. Neither the Stockdale firm nor Wayland informed plaintiff that the motions had been filed or that her case had been dismissed. In December 1989, plaintiff contacted a lawyer who had the court file checked and determined the case had been dismissed in February of that year.

Plaintiff filed the instant legal malpractice action on February 16, 1990. Thus, plaintiff's legal malpractice complaint was filed less than one year after the underlying action was dismissed, but more than one year after the five-year deadline imposed by section 583.310 passed.

---

[3] "December 21, 1988

"Ms. COLLEEN J. MOSS
"Post Office Box 3003
"Edmond, O[k]lahoma 73083
"Re: MICHAEL WAYLAND
"Dear Ms. Moss:
"I am in receipt of your certified letter concerning Mr. Wayland. We have left a message with him asking him to contact you immediately, and we have sent a letter to him in regard to that matter, a copy of which is attached.
"As you are aware, our firm has no information concerning your cases. The files have never been brought into the firm and, apparently, Michael was working on them independently.
"Inasmuch as we have absolutely no information concerning your files, we are unable to offer any assistance or advice. If you are unable to contact Mr. Wayland, I would suggest that you immediately contact other counsel to assist you so as to avoid adverse consequences to your cases. While I have no information about your cases, the dates of the accidents that you list in your letter would indicate to me that you must take immediate action.
"If you are unable to discuss the matter with Mr. Wayland, I can only recommend that in addition to contacting a new lawyer, you contact the California State Bar for assistance.

 "Very truly yours,
 "STOCKDALE, PECKHAM & WERNER
 "J. EARL ROGERS, JR.
"JER/deb
"Enclosure
"cc: Michael T. Wayland, Esq."

DISCUSSION

*The Statute of Limitations Requires Both Knowledge and Actual Injury*

 Section 340.6, subdivision (a) requires that a legal malpractice action be filed within one year after the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, "except that the period shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury . . . ."

In their summary judgment papers below the parties focused almost exclusively on the question of when plaintiff discovered or should have discovered the negligence. Defendant argued plaintiff knew in December 1988 that the five-year deadline was about to expire and that her case might be dismissed. Plaintiff was aware of the requirement that cases be brought to trial within five years and she made that point in her communications to Wayland and the Stockdale firm. However, in opposition to summary judgment plaintiff declared, without any elaboration, that even though she was aware of the five-year requirement it was her understanding that some cases go forward even after expiration of the five-year period, especially in Los Angeles.

In any event, plaintiff's knowledge is not determinative if the statute of limitations was tolled until she sustained "actual injury" and the action was filed within a year thereof. (*Adams, supra*, 11 Cal.4th at p. 589, fn. 2.) Even if we were to assume that plaintiff knew or should have known that the five-year period had expired and that her case was subject to dismissal, that does not end the inquiry. Defendant's summary judgment motion simply did not address when plaintiff suffered "actual" injury; it at most claimed plaintiff "believed" she suffered injury when the five-year deadline passed.

Although the parties' moving papers failed to address actual injury, the trial court's order granting the motion for summary judgment did. The trial court opined, "plaintiff sustained actual injury at the time the [five-year] statute ran, December 1988, not when the case was dismissed. The damage became irremediable whe[n] the [five-year] statute ran. The fact that it took two months for the case to be dismissed is irrelevant since the case could not be brought to trial later than December 27 [*sic*], 1988."

In supplemental briefs following retransfer for reconsideration in light of *Adams*, defendant contends plaintiff suffered actual injury in December 1988, when the five-year statute ran; plaintiff contends there is a triable

factual issue that plaintiff did not suffer actual injury until her case was actually dismissed in February 1989. Both parties claim *Adams* supports their view.

### *Adams*

In *Adams,* the attorney negligently advised the client of the deadline for filing a wrongful death action, and the filing deadline was missed. Four justices (three signing the lead opinion of Justice Arabian, plus Justice Kennard in her concurring opinion) agreed the trial court erred in concluding the client necessarily suffered actual injury on the date the filing deadline expired. The lead opinion held the time when the plaintiff suffered damage is generally a question of fact. (11 Cal.4th at pp. 586, 593.) It said that although the passing of a statute of limitations deadline may substantially impair the plaintiff's rights, in other circumstances the "actual loss of the underlying remedy may remain contingent, that is, the attorney's negligence may have created only the potential for future harm." (*Id.* at pp. 589, 590.) It concluded, "Notwithstanding apparent expiration of the statutory period, questions of waiver, estoppel, or even the applicable limitations period may raise factual issues concerning when the attorney's negligence caused definite and certain injury or more than nominal or insubstantial damages." (*Id.* at pp. 590-591.) The lead opinion cautioned, however, that actual injury does not necessarily require "some form of final adjudication, as by judgment or settlement. . . . It would be for the trier of fact to determine when the requisite harm actually did occur . . . ." (*Id.* at p. 591.)[4]

Justice Kennard concurred that the question when the plaintiff suffered actual injury is primarily a question of fact, which does not necessarily require a prior adjudication. (11 Cal.4th at pp. 595-596.) Justice Kennard was emphatic that actual injury is not necessarily established by the mere expiration of the limitations period, and that determining actual injury may require resolution of factual issues such as whether the third party has waived or is estopped to assert the statute of limitations defense. (*Id.* at p. 596.) Justice Kennard elaborated on the concept that a statute of limitations may be waived (*id.* at p. 597) and concurred in the disposition expressly "with the understanding that in a 'missed statute' case the mere expiration of a conventional limitations period is not actual injury." (*Id.* at p. 599.)

---

[4]The lead opinion thereby rejected the view of the three dissenting justices, who would have established a "bright line" rule that as a matter of law a plaintiff does not suffer actual injury until the underlying lawsuit is determined, whether by dismissal, settlement, or entry of adverse judgment. (11 Cal.4th at pp. 600, 605 (dis. opn. of Lucas, C. J.).)

*Application of Adams to This Case*

Defendant contends this case is distinguishable from a "missed statute [of limitations] case," because the sanction of dismissal for failing to bring a case to trial in five years is mandatory and automatic, and not dependent upon a defendant's raising it as an affirmative defense. Section 583.310 provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." Section 583.360 provides, "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article. [¶] (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." Defendant contends that in light of the mandatory nature of the five-year rule, plaintiff suffered actual injury when the five-year date passed.

Although the five-year statute is not subject to waiver and estoppel to the same extent as statutes of limitations, it does have exceptions. Factual questions could arise which might salvage a plaintiff's case despite the passage of five years. As with statutes of limitations discussed by the *Adams* majority, the passing of the five-year deadline does not by itself *necessarily* establish that the plaintiff suffered actual injury from an attorney's negligent delay to bring the action to trial. If any of the exceptions to mandatory dismissal may have been applicable to the motion for dismissal filed and granted in the underlying action, they would necessarily constitute the foundation for disputed issues of fact as to the date of actual injury, precluding the granting of defendant's motion for summary judgment in the present case.

The exceptions to the mandatory dismissal statute are: (1) written stipulations or oral agreements made in open court extending the five-year time period; (2) exclusion from the computation of the five years any time period during which the jurisdiction of the court was suspended or the prosecution of the action was stayed; and (3) bringing the action to trial was impossible, impracticable, or futile. (§§ 583.330, subds. (a), (b), 583.340, subds. (a-c).) There is no evidence raising a factual issue as to the first or second exceptions. The dismissal motion in the underlying action was supported by the uncontradicted declaration of counsel stating that: "There has never been any agreement or stipulation to waive the five year statute in regard to this case." Furthermore, the register of actions in that matter does not indicate the jurisdiction of the court was suspended or stayed. The only exception with potential application to the present matter is the third, a showing that it

was impossible, impracticable, or futile to bring the action to trial before December 29, 1988.

■ "What is impossible, impracticable, or futile is determined in light of all the circumstances of a particular case, including the conduct of the parties and the nature of the proceedings. The critical factor is whether the plaintiff exercised reasonable diligence in prosecuting its case. [Citation.] The statute must be liberally construed, consistent with the policy favoring trial on the merits." (*Brown & Bryant, Inc.* v. *Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251 [29 Cal.Rptr.2d 144].) "Reasonable diligence places on a plaintiff the affirmative duty to make every reasonable effort to bring a case to trial within five years, even during the last month of its statutory life. [Citation.] [¶] Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions. [Citation.] Moreover, reasonable diligence alone is not sufficient to protect a party from an involuntary dismissal; rather, reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability, or futility. [Citation.]" (*Baccus* v. *Superior Court* (1989) 207 Cal.App.3d 1526, 1532 [255 Cal.Rptr. 781].)

■ The trial court's register of actions in the underlying case shows that after filing the complaint in December 1983, Wayland filed a change of firm name in November 1984 and a change of address in April 1986. Later, in January 1988, Interinsurance Exchange filed a motion to strike the complaint, which was taken off calendar. A year later, the motions to dismiss were filed. The record thus shows that other than filing the complaint, Wayland took *no* affirmative steps to advance plaintiff's case to trial. The record demonstrates a *total* absence of diligence. Given that reasonable diligence is a condition precedent to invoking the exception of impossibility, impracticability, or futility, the record arguably shows there was no possibility that an application to the trial court to extend the five-year period could have succeeded. From this it could be argued plaintiff suffered unavoidable actual injury when the five-year deadline passed.

The lack of diligence was so total, however, as to raise the possibility that plaintiff was abandoned by the positive misconduct of her attorney. (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391 [38 Cal.Rptr. 693]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240]; *Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61].) To paraphrase *Daley,* "Despite the general rule which imputes the attorney's neglect to the client, there are exceptional cases in which

the client, relatively free from personal neglect, will be relieved of a default or dismissal attributable to the inaction or procrastination of [her] counsel. [Citations.] [¶] Here the neglect was inexcusable and extreme, amounting to positive misconduct. [Wayland's] consistent and long-continued inaction was so visibly and inevitably disastrous, that his client was effectually and unknowingly deprived of representation. An attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action." (*Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 391.) The Supreme Court cited *Daley* with approval, but found it inapplicable in *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 899 [187 Cal.Rptr. 592, 654 P.2d 775]. It noted, "What *Daley, Orange Empire,* and *Buckert* have in common is a total failure on the part of counsel to represent the client: each attorney had de facto substituted himself out of the case." (*Id.* at p. 900; see also *Freedman* v. *Pacific Gas & Electric Co.* (1987) 196 Cal.App.3d 696, 706 [242 Cal.Rptr. 8].) As we have observed, Wayland's performance is so devoid of anything approaching the diligent attention expected of counsel, a trier of fact could find "positive misconduct" which is not chargeable to plaintiff.

The record thus raises a factual issue whether dismissal might have been avoided on the basis that plaintiff could not be penalized for the positive misconduct of her attorney who abandoned her. Until plaintiff's opportunity to oppose the motion for dismissal was lost, we cannot say as a matter of law that she sustained actual injury. When that opportunity was lost depends on a number of factual questions involving the conduct of Wayland, the Stockdale firm, and plaintiff, and what each of them did to avoid the dismissal. It is unclear what Stockdale did to protect the plaintiff's opportunity to avoid the dismissal. Its letter of December 21, 1988, indicated a copy was sent to Wayland. Did Stockdale communicate with him and reach an understanding that he would oppose the motion or otherwise protect plaintiff's interests? A copy of the Stockdale letter to Wayland was purportedly sent to plaintiff presumably providing an address. Since that letter was not included in the record before us, we have no way of knowing its importance or influence on the parties or what it revealed about any arrangement for protecting plaintiff's interests. Another possible inquiry is whether plaintiff could have avoided the dismissal by contacting another attorney before December 29, 1988, or otherwise protect her own interest. All of these circumstances bear on the question when the dismissal became unavoidable. This requires factual development to ascertain when plaintiff sustained actual injury. We therefore hold the trial court erred in concluding as a matter of law that plaintiff suffered actual injury as soon as the five-year deadline passed. (*Adams, supra,* 11 Cal.4th at p. 593.) The summary judgment in favor of defendant should be reversed.

We note a suggestion in Stockdale's motion for summary judgment and a clear implication of Stockdale's December 21, 1988, letter, that Stockdale was not plaintiff's attorney and had no duty to do anything to protect her interests. We cannot say as a matter of law that Stockdale had no duty to appear on plaintiff's behalf to oppose dismissal. There is at least a possible factual issue as to whether there existed an attorney-client relationship between Stockdale and plaintiff. (E.g., *Miller* v. *Metzinger* (1979) 91 Cal.App.3d 31, 39 [154 Cal.Rptr. 22] [issue of fact as to creation of attorney-client relationship precluded summary judgment].) Stockdale allowed Wayland to office with the firm and appear to be practicing under their banner. There is a possibility plaintiff could show she was reasonably induced by Stockdale's prior conduct to believe the Stockdale firm represented her. (See *Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532] [client's belief in attorney-client relationship must be reasonably induced by attorney's representations or conduct]; *Wells Fargo & Co.* v. *City etc. of S. F.* (1944) 25 Cal.2d 37, 43 [152 P.2d 625] [attorney of record's associated attorney has authority to appear without formal substitution]; *Raskin* v. *Superior Court* (1934) 138 Cal.App. 668, 670 [33 P.2d 35] [same].) The extent of Stockdale's culpability, if any, remains an open question of fact.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to plaintiff.

Epstein, J., and Hastings, J., concurred.